**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ML Servicing Co., Inc., an Arizona corporation; and ML Liquidating Trust,<br><br>Plaintiffs,<br><br>vs.<br><br>Greenberg Traurig, LLP, a New York limited liability partnership; Robert S. Kant and Ellen P. Kant, husband and wife; John and Jane Does 1-30; Black Corporations 1-30; White Partnerships 1-30; and Gray Trusts 1-30,<br><br>Defendants. | No. CV11-0832-PHX DGC<br><br><br>**ORDER** |

Defendants Robert and Ellen Kant ("Kant Defendants") move to dismiss on grounds of fraudulent joinder. Doc. 10. Plaintiffs oppose the motion (Doc. 13), and the Kant Defendants have filed a reply (Doc. 16). Plaintiffs also filed a motion to remand the case to Maricopa County Superior Court. Doc. 14. All Defendants oppose (Doc. 17), and Plaintiffs have filed a reply (Doc. 23). For the reasons that follow, the Court will grant Plaintiffs' motion for remand and decline to rule on the Kant Defendants' motion to dismiss.[1]

**I.    Background.**

The relevant allegations in the complaint (Doc. 1-1) are summarized as follows.

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Defendants Greenberg Traurig, LLP ("GT") and Robert Kant were securities counsel for Mortgages, Ltd. ("ML") during the period leading up to ML's bankruptcy.[2] GT and Kant prepared at least eleven Private Offering Memoranda ("POM") for ML to use in connection with its efforts to procure funds from investors. Doc. 1-1 ¶ 50. In June of 2008, some of ML's creditors forced ML into an involuntary bankruptcy proceeding. *Id.* at ¶ 161.

On May 20, 2009, the Bankruptcy Court confirmed ML's Chapter 11 reorganization plan ("Plan"). The Plan allows the liquidating trust to pursue ML's claims against professionals such as Defendants. *Id.* at ¶ 4. On January 10, 2010, the Securities and Exchange Commission "entered an Order Instituting Administrative Proceedings Pursuant to § 15(b) of the Securities Exchange Act of 1934, Making Findings, and Revoking Broker-Dealer Registration" ("SEC Order") against ML. *Id.* at ¶ 183. Plaintiffs and GT on its own behalf and on behalf of its affiliates executed a tolling agreement ("Agreement") which tolled all applicable statutes of limitations. *Id.* at ¶ 14.

Almost one year after the parties signed the Agreement, Plaintiffs commenced this action against Defendants in Maricopa County Superior Court, alleging legal malpractice and breach of fiduciary duty. *Id.* On April 25, 2011, Defendants removed the case to this Court on two independent grounds: (1) bankruptcy jurisdiction under 28 U.S.C. § 1334(b) because the case is "related to" the ongoing bankruptcy proceeding;[3] and (2) diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. On May 26, 2011, Plaintiffs filed the motion to remand for lack of subject matter jurisdiction. Doc. 14.

**II.     Removal and Remand Principles.**

Pursuant to 28 U.S.C. § 1441(a), a civil case brought in state court over which the federal district courts have original jurisdiction may be removed to the federal court in

---

[2] As part of its Chapter 11 plan, Mortgages, Ltd. changed its name to ML Servicing Co., Inc. The Court will refer to the entity as ML for purposes of this motion.

[3] The bankruptcy case in question is *In re Mortgages Ltd.*, No. 2:08-bk-07465.

the district where the action is pending. The statute is to be strictly construed against removal jurisdiction. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). This "strong presumption" against removal "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected, and the case remanded to state court, "if there is any doubt as to the right of removal in the first instance." *Id.*; *see* 28 U.S.C. § 1447(c). Moreover, the burden of showing jurisdiction exists is allocated to the party asserting jurisdiction. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The Court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *see Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

**III.    "Related To" Bankruptcy Jurisdiction.**

Federal courts have original jurisdiction over cases "related to" bankruptcy proceedings. 28 U.S.C. § 1334(b). Bankruptcy "related to" jurisdiction is not limitless, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995), and the "Ninth Circuit has adopted the '*Pacor* test' for determining the scope of 'related to' jurisdiction" generally. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (internal citation omitted). Under the *Pacor* test, federal courts have "related to" jurisdiction over any proceeding where "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *Id.* (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

The Ninth Circuit has stated, however, that bankruptcy jurisdiction after a reorganization plan has been approved (i.e., post-confirmation jurisdiction) is necessarily more limited than pre-confirmation jurisdiction, and has adopted the Third Circuit's "close nexus" test for determining whether post-confirmation "related to" jurisdiction

exists. *Pegasus*, 394 at 1194. The Third Circuit concluded that "matters affecting the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" *Id.* (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3rd Cir. 2004)). Bankruptcy courts generally do not retain "related to" jurisdiction over claims that "could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *In re Ray*, 624 F.l3d 1124, 1135 (9th Cir. 2010).

Although a bankruptcy plan has already been confirmed here, rendering this a post-confirmation action, Defendants argue that *Pacor's* "any effect" test should be used instead of the narrower "close nexus" test adopted by the Ninth Circuit in *Pegasus*. Doc. 17 at 8. Defendants assert that *Pegasus* is not analogous to this case and suggest that the "close nexus" test does not apply to "post-confirmation cases involving liquidating plans." Doc. 17 at 10 n.3. This argument is unpersuasive because the bankruptcy plan in *Pegasus* created a liquidating trust just as the plan in this case. 394 F.3d at 1194. Absent case law suggesting otherwise, the Court will apply the "close nexus" test in determining whether post-confirmation "related to" bankruptcy jurisdiction exists here.

Defendants argue in the alternative that "related to" jurisdiction exists because "recovery for actions pursued by [Plaintiff] ML Liquidating Trust is placed in a Liquidation Fund and used to pay creditors under the Plan," Doc. 17 at 11, but the Ninth Circuit has rejected a similar argument as overbroad. *Pegasus*, 394 F.3d at 1194 n.1 ("[W]e are not persuaded by the Appellees' argument that jurisdiction lies because the action could conceivably increase the recovery to the creditors. As the other circuits have noted, such a rationale could endlessly stretch a bankruptcy court's jurisdiction." (citation omitted)). Defendants have not shown that this case is different, or that the Court would be required to interpret the bankruptcy plan in order to resolve Plaintiffs' claims, *see id.* at 1194 (holding that "related to" jurisdiction existed where resolution of claims involved

interpretation of the bankruptcy plan). In light of the presumption against removal, Defendants have not shown that Plaintiffs' claims satisfy the "close nexus" test necessary for "related to" jurisdiction to be found in this case.

**IV.    Diversity Jurisdiction.**

A federal court's diversity jurisdiction extends to "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different states. 28 U.S.C. § 1332(a)(1). Plaintiffs argue that diversity does not exist here. It is undisputed that ML Servicing Co., Inc. and ML Liquidating Trust's ("Trust") trustee are both citizens of Arizona (Doc. 1 ¶¶ 5-6), that at least one beneficiary of the Trust is a citizen of New York (Doc. 14-3), that GT is a citizen of New York (Doc. 1 ¶ 7), and that the Kant Defendants are citizens of Arizona (Doc. 1 ¶ 9). The Court will address the two parties at issue, namely the Trust Plaintiff and the Kant Defendants.

**A.    Citizenship of Trust.**

In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In *Navarro Sav. Ass'n v. Lee*, the Supreme Court held that a business trust's trustees – who had legal title, managed assets, and controlled litigation – were the real parties to the controversy and could invoke diversity jurisdiction on the basis of their own citizenship without regard to the citizenship of the trust's beneficiaries. 446 U.S. 458, 465-66 (1980). Ten years later, the Supreme Court stated that it has "never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members." *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990). In clarifying *Navarro*, Justice Scalia explained that "*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." *Id.* at 192-93. On the issue of whether a trust has the citizenship of only its trustees or of both its trustees and its beneficiaries, the circuits are split. *Carden* did not define which entities qualify as

"members" for the jurisdictional analysis.

In this circuit, however, *Johnson* held that "[a] trust has the citizenship of its trustee or trustees." 437 F.3d at 899. Despite this unambiguous language, Plaintiffs contend that the Ninth Circuit has not addressed the issue squarely and that *Johnson* is not controlling because it did not consider the citizenship of the trust's beneficiaries when making its jurisdictional analysis. Doc. 23 at 5. Plaintiffs urge this Court to follow Third and Eleventh Circuit case law holding that a trust has the citizenship of its trustee(s) and beneficiaries. Doc. 23 at 4-7. Defendants argue that *Johnson* clearly holds that the citizenship of a trust is determined by the citizenship of its trustee only. Doc. 17 at 4.

Although the relevant language in *Johnson* is terse and relies on *Navarro*, the court appears to have considered *Carden* by citing to it more than once. Moreover, the language in *Johnson* is unambiguous. *Johnson* is binding on this Court, and therefore only the citizenship of the trustees is relevant. Because the trustee is a citizen of Arizona, the Trust also is a citizen of Arizona. The dispositive issue, therefore, is whether the Kant Defendants – also Arizona citizens – have been fraudulently joined.

**B.  Fraudulent Joinder.**

Removal under diversity jurisdiction is proper "only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added); *see* 28 U.S.C. § 1332(a)(1). Because diversity jurisdiction requires complete diversity of citizenship, each of the plaintiffs must be a citizen of a different state than each of the defendants. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). "Nevertheless, one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Id.*

"[F]raudulent joinder is a term of art." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining

diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Martori v. Golden Rule Ins., Co.*, Case No. 09-00212, 2009 WL 1257389 at *2-4 (D. Ariz. May 14, 2009) (quoting *Morris*, 236 F.3d at 1067).

In evaluating the allegations and evidence, courts employ a presumption against finding fraudulent joinder. *See Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001); *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal. 1998). The Court must "resolve all ambiguities in state law in favor of the plaintiff[]." *Diaz*, 185 F.R.D. at 586. "[A]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." *Plute*, 141 F. Supp. 2d at 1008; *see Levine*, 41 F. Supp. 2d at 1078; *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998).

Defendants argue that the claims against the Kant Defendants are time-barred and that their joinder therefore is fraudulent. As the removing party, Defendants must defeat the presumptions against removal and against a finding of fraudulent joinder by showing the statute of limitations under state law clearly bars the claim. *See Bertrand v. Aventis Pasteur Laboratories, Inc.*, 226 F. Supp. 2d 1206, 1212 (D. Ariz. 2002) ("To establish that an instate defendant has been fraudulently joined, the removing party must show" that "there is no possibility that the plaintiff would be able to establish a cause of action against the instate defendant in state court"). The statute of limitations in Arizona for legal malpractice and breach of fiduciary duty is two years, and begins to run when the cause of action accrues. A.R.S. § 12-542. These causes of action accrue when (1) "the client knew or should have known of his attorney's negligence," and (2) "the plaintiff-client has sustained some injury or damaging effect from the malpractice." *Ariz. Mgmt. Corp. v. Kallof*, 688 P.2d 710, 712-13 (Ariz. App. 1984); *see also CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 7 P.3d 979, 981-82 (Ariz. App. 2000).

"[U]nder Arizona law, the question of when [a client] knew or should have known

of [an attorney's] negligence is critical in determining whether the statute of limitations has run." *Cannon v. Hirsch Law Office, P.C.*, 213 P.3d 320, 331 (Ariz. Ct. App. 2009) (quoting *Long v. Buckley*, 629 P.2d 557, 559 (Ariz. Ct. App. 1981)). The discovery issue itself involves questions of reasonableness and knowledge, matters which courts are particularly wary of deciding as a matter of law. *Id.* (citing *Long*, 629 P.2d at 560).

Defendants argue that Plaintiffs' complaint clearly demonstrates that Plaintiffs, through their predecessor ML, were on notice of all the facts underlying their claims against Kant and had allegedly suffered harm by June 20, 2008, the date ML was forced into voluntary bankruptcy. Doc. 10 at 7-8. Defendants cite the following allegations in the complaint, all occurring by June 20, 2008: (1) Kant had drafted his last ML POM; (2) ML Managing Director Robert Furst had become "very concerned about the inadequacies in [Mortgages Ltd.'s] disclosures to its investors, including the disclosures that had been prepared by GT and Kant;" and (3) ML was no longer raising money from investors or distributing the POMs drafted by Kant. *Id.*

Defendants also argue that even if Plaintiffs did not or should have not known of potential claims against the Kant Defendants by June 20, 2008, ML was directly informed that it might have claims against them on June 27, 2008. *Id.* at 8. Defendants cite a brief, filed by the group of creditors who forced ML into involuntary bankruptcy, stating that "[t]o the extent any improprieties tainted these private offerings, [Mortgages Ltd.'s] estate may possess claims against Greenberg for its work associated with the same." *Id.* Based on this statement, Defendants assert that there can be no doubt ML was on notice of its claims against Kant by the end of June 2008. *Id.*

Plaintiffs assert that ML did not know nor should it have known about actual claims against GT and Kant until the SEC Order was entered on January 19, 2010. Doc. 13 at 10. According to Plaintiffs, the SEC Order made it evident that Kant and GT had breached their duties to ML and failed to provide correct and complete legal advice regarding ML's securities. Doc. 14 at 5. If ML's cause of action did not accrue until the

SEC Order was entered, ML's suit against the Kant Defendants would not be time-barred and the Kant Defendants would not be fraudulently joined.

Plaintiffs counter Defendants' argument regarding ML's knowledge before ML was forced into involuntary bankruptcy by stating that the Kant Defendants are merely speculating about when ML knew that it had viable claims against them. Doc. 13 at 10. Plaintiffs argue that ML's knowledge that it was in serious financial trouble does not equate to knowledge that GT or Kant had done anything to cause the financial trouble. *Id.* Plaintiffs also contend that ML would not have continued to allow GT to represent ML in its bankruptcy proceeding through May 2009 had ML known or even suspected that Kant and GT's action had caused ML to deepen its insolvency. *Id.*; Doc. 14 at 8.

Plaintiffs do not contest Defendants' statement that ML was directly informed it might have claims against Defendants on June 27, 2008. But Plaintiffs do contest Defendants' assertion that the June 27, 2008 brief created the knowledge or even reasonable suspicion of Plaintiffs' claims against the Kant Defendants that is required for the action to accrue. Doc. 14 at 7. The Court agrees. Simply because ML was informed that it might have claims against the Kant Defendants "to the extent that improprieties" occurred does not equate to ML's knowledge that it actually had those claims. Whether ML reasonably should have known that it had claims against the Kant Defendants on June 27, 2008 is a question of fact that cannot be resolved at this stage.

Given the presumption against fraudulent joinder and the factual issues that must be resolved before claims against the Kant Defendant are time-barred, the Court cannot conclude that fraudulent joinder has occurred. As already noted, "all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." *Plute*, 141 F. Supp. 2d at 1008. Because the Court cannot conclude that the Kant Defendants have been fraudulently joined, the Court lacks diversity jurisdiction and this case must be remanded. In light of this ruling, the Court need not address whether the case should be remanded on equitable

grounds under 28 U.S.C. § 1452(b). Because remand is appropriate, the Kant Defendants' motion to dismiss will not be ruled upon by this Court.

**IT IS ORDERED:**

1. Plaintiffs' motion to remand (Doc. 14) is **granted**.

2. The Clerk shall remand the action to the Maricopa County Superior Court.

Dated this 2nd day of August, 2011.

_David G. Campbell_
David G. Campbell
United States District Judge